UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TINA MARIE SNODGRASS, | ) | CIVIL ACTION NO. 4:20-CV-02093 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.     INTRODUCTION

Plaintiff Tina Marie Snodgrass, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3) (incorporating 42 U.S.C. §405(g) by reference).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision must be AFFIRMED.

II.     BACKGROUND & PROCEDURAL HISTORY

On July 28, 2015, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 231; Doc. 14-5, p. 2).  In this application, Plaintiff alleged she became disabled as of May 4, 2012, when she was forty-seven years old, due to the following conditions: extreme anxiety, depression, permanent neck injury, nerve damage in upper back and arms, and morbid obesity. (Admin. Tr. 74; Doc. 14-3, p. 2 ). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, use her hands, and get along with others. (Admin. Tr. 299; Doc. 14-6, p. 44). Plaintiff finished the eleventh grade. (Admin. Tr. 39; Doc. 14-2, p. 40). Before the onset of her impairments, Plaintiff worked as a cook and shift manager. (Admin. Tr. 84; Doc. 14-3, p. 12).

On November 6, 2015, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 111; Doc. 14-4, p. 2). On December 31, 2015, Plaintiff requested an administrative hearing. (Admin. Tr. 116; Doc. 14-4, p. 7).

Plaintiff's first administrative hearing was held on June 13, 2017, where she appeared and testified during a hearing before Administrative Law Judge Randy Riley (the "ALJ"). (Admin. Tr. 35; Doc. 14-2, p. 36). She was assisted by counsel at this hearing. (*Id.*). On September 19, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 87; Doc. 14-3, p. 15). On September

28, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 176; Doc. 14-4, p. 67). On November 23, 2018, the Appeals Council remanded the case back to the ALJ to consider medical evidence that the ALJ previously rejected, to consider how the record the needed to be further developed, and to follow four specific instructions.[1] (Admin. Tr. 108-09, Doc. 14-3, pp. 36-37).

Based on the Appeals Council's order, ALJ Riley held a new hearing on July 25, 2019. (Admin. Tr. 54; Doc. 14-2, p. 55). On September 5, 2019, ALJ Riley issued a new decision again denying Plaintiff's application for benefits. (Admin. Tr. 12-14; Doc. 14-2, pp. 13-15). The Appeals Council denied Plaintiff's request for review on September 9, 2020. (Admin. Tr. 1; Doc. 14-2, p. 2). Plaintiff did not submit substantive new evidence to the Appeals Council. (Admin. Tr. 4; Doc. 14-2, p. 5).

On November 11, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (*Id.*). As relief, Plaintiff requests that the Court to either remand the case for another hearing, or to award her Supplemental Security Income

---

[1] Plaintiff alleges that the ALJ did not follow the Appeals Council's order. So, a more detailed discussion of their remand order, and the ALJ's handing of it, will be discussed in detail in Section IV(D) of this Memorandum Opinion.

benefits. (*Id.*). Plaintiff also asks the Court for attorney's fees under the Equal Access to Justice Act, and other relief as Court "deems just and proper." (*Id.*).

On April 5, 2021, the Commissioner filed an Answer. (Doc. 13). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (*Id.*). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 14).

Plaintiff's Brief (Doc. 17), the Commissioner's Brief (Doc. 20), and Plaintiff's Reply (Doc. 21) have been filed.  This matter is now ripe for decision.

## III.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security appeals.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*,

383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial

evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.

Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not

whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff

is not disabled is supported by substantial evidence and was reached based upon a

correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417,

2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's

errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v.

Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination

as to the status of a claim requires the correct application of the law to the facts.");

*see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in

---

[2] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on September 10, 2019.

substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the

claimant's age, education, work experience and RFC. 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

With that review of the legal standards, I now turn to the merits of this case.

IV.   DISCUSSION

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his September 2019 decision, the ALJ evaluated Plaintiff's application at steps one through step five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between July 21, 2015 (Plaintiff's application date) and

Page 8 of 26

September 10, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17; Doc. 14-2, p. 18). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: right carpal tunnel syndrome, type 2 diabetes with polyneuropathy, degenerative disc disease of the cervical spine, cervical radiculopathy, lumbar radiculopathy, and morbid obesity. (Admin. Tr. 17; Doc. 14-2, p. 18). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19-20; Doc. 14-2, pp. 20-21).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) subject to the following additional limitations:

> [Plaintiff] can occasionally climb stairs, balance, stoop, kneel, crouch and crawl, no operation of foot controls or climbing of ladders, ropes or scaffolds. Further the claimant can perform frequent right fine manipulation and must avoid exposure to hazards.

(Admin. Tr. 20; Doc. 14-2, p. 21).

At step four, the ALJ found that Plaintiff did not have any past relevant work. (Admin. Tr. 25; Doc. 14-2, p. 26). At step five, the ALJ found that, considering

Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 25-26; Doc. 14-2, pp. 26-27). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: a ticket taker (DOT Code # 344.667-010), information clerk (DOT Code # 237.367-018), cashier II (DOT Code # 211.462-010). (Admin. Tr. 26; Doc. 14-2, p. 27).

> Plaintiff contends that the ALJ's opinion is marred by the following errors:

> (1) The ALJ's consideration of Plaintiff's mental impairments is improper and unsupported by substantial evidence as he failed to provide adequate rationalization for finding them non-severe and for granting Dr. Moskel's opinion very limited weight.

> (2) The ALJ's RFC determination is unsupported by substantial evidence as the ALJ failed to take the actions recommended by the Appeals Council in their remand order.

(Doc. 17, pp. 7-8). Plaintiff's first statement of error is really a two-pronged attack on the ALJ's analysis: (1) an attack on the ALJ's finding at step 2 that Plaintiff's mental impairments were non-severe, and (2) an attack on the ALJ's treatment of Dr. Moskel's opinion when the ALJ considered Plaintiff's RFC. Likewise, Plaintiff's second statement of error is a two-pronged argument: (1) arguing that the ALJ did not follow the orders of the Appeals Council on remand,

and (2) that the ALJ erred in analyzing Plaintiff's physical RFC. I'll discuss all four of these arguments in turn.

> B.   WHETHER THE ALJ ERRED IN FINDING THAT PLAINTIFF'S MENTAL IMPAIRMENTS AT STEP 2 WERE NON-SEVERE

Plaintiff argues that at step 2, the ALJ improperly found that Plaintiff's anxiety and depression were non-severe impairments. (Doc. 17, p. 9). In finding her mental impairments non-severe, Plaintiff claims that "the ALJ improperly dismissed Dr. Moskel's opinion, overturned the diagnoses from Plaintiff's multiple providers, and relied on his own speculation as to the nature of Plaintiff's [mental health] treatment . . . ." (*Id.*). Plaintiff also argues that the ALJ improperly used the fact that Plaintiff has only received conservative mental health treatment in his analysis. (*Id.* at pp. 10-12). Plaintiff continues, stating that the ALJ cherry-picked evidence to support his step 2 decision, (*Id.* at pp. 12-13), and that a step 2 error is not harmless, because the error continued into the rest of the opinion. (*Id.* at pp. 14-15). The Commissioner responds by arguing the ALJ properly supported his opinion with extensive citations to objective medical evidence (Doc. 20, pp. 10-11). On this point, I find Plaintiff's argument unavailing; the ALJ's error, if any, at step 2 is harmless.

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable,

and (2) severe or non-severe; this step is essentially a threshold test.  20 C.F.R. §

404.1520(a)(4)(ii); SSR 85-28, 1985 WL 56856.

An impairment, or combination of impairments, is not severe if it does not

significantly limit a claimant's ability to do basic work activities.  20 C.F.R.

§ 404.1522(a); 20 C.F.R. § 416.922(a); *see also* 20 C.F.R. § 404.1522(b) (defining

basic work activities); 20 C.F.R. § 416.922 (same).  Conversely, an impairment is

"severe" if it *does* significantly limit a claimant's physical or mental ability to do

basic work activities. The phrase, "significantly limits," however is not synonymous

with "disability." Rather, the ALJ's analysis at step two is a threshold test designed

to screen out *de minimis* claims.

Under the Commissioner's regulations, *all* impairments, both severe and non-

severe, must be accounted for in an ALJ's RFC assessment. 20 C.F.R. § 404.1545.

Therefore, in cases where the ALJ found at least one impairment is found medically

determinable and severe, an ALJ's unsupported conclusion that one or more other

impairments are medically determinable but "non-severe" may be viewed as

harmless error unless it appears that the ALJ's error influenced his or her RFC

assessment. As explained in *McClease v. Comm'r of Soc. Sec.*,

> [E]ven if an ALJ erroneously determines at step two that one
> impairment is not "severe," the ALJ's ultimate decision may still be
> based on substantial evidence if the ALJ considered the effects of that
> impairment at steps three through five.  However, where it appears that
> the ALJ's error at step two also influenced the ALJ's RFC analysis, the

> reviewing court may remand the matter to the Commissioner for further consideration. *See Nosse v. Astrue*, No. 08-[CV-1173, 2009 WL 2986612, *10] (W.D. Pa. Sept. 17, 2009).

No. 08-cv-1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); *see also Salles v. Comm. of Soc. Sec.*, 229 F. App'x. 140, 145, n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

As applied here, even if the ALJ erred in not finding Plaintiff's mental health conditions severe, the error was harmless because the ALJ found that Plaintiff had severe impairments and continued his analysis. When the ALJ determined Plaintiff's RFC, he expressly considered Plaintiff's anxiety and depression. For example, the ALJ noted that Plaintiff suffered from "uncontrollable panic attacks," and that anxiety limits her activities of daily living. (Admin. Tr. 24-25; Doc. 14-2, pp. 22-23). Further, the ALJ also considered the opinions of Dr. Richard Williams and Dr. Moskel who opined on Plaintiff's mental health impairments. Both considered Plaintiff's depression and anxiety in their opinions, and the ALJ thoroughly explained how he considered each opinion. Additionally, when analyzing these opinions and Plaintiff's credibility, the ALJ analyzed Plaintiff's mental health records to reach his decision. So, in sum, any error committed by the ALJ is harmless.

C.    WHETHER THE ALJ ERRED IN HIS ANALYSIS OF DR. MOSKEL'S OPINION

Plaintiff argues that the ALJ incorrectly failed to give treating provider Dr. Moskel's opinion more than "very limited weight." (Doc. 17, pp. 12-14). Plaintiff contends that in discounting Dr. Moskel's opinion, the ALJ cited to Plaintiff's normal psychiatric examinations and conservative mental health treatment, but Dr. Moskel's treatment notes show the opposite. (*Id.*). Plaintiff further argues the ALJ cherry picked favorable medical data. (*Id.*). The Commissioner argues that the ALJ properly summarized Dr. Moskel's treatment notes, as on multiple occasions, Plaintiff presented with stable moods, and unremarkable mental status exams. (Doc. 20, p. 15-16). The Commissioner further argues that even if there is evidence that conflicts with the ALJ's findings, a federal court cannot reweigh the evidence. (*Id.* at p. 17). I agree with the Commissioner, and before I explain why, I will describe the regulations that govern medical opinion evidence for applications filed before March 27, 2017.

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1). As of the date Plaintiff's

application was filed in July 2015, acceptable medical sources included only licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language psychologists. 20 C.F.R. § 404.1502(a). The definition was expanded to include other types of sources, like advances practice nurses, in March of 2017. This expansion, however, does not apply to applications filed before March 27, 2017. *Id.* Regardless of its source, the ALJ is required to consider every opinion by acceptable medical sources or by sources who are not acceptable medical sources together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 404.1527(f); 20 C.F.R. § 416.927(c) 20 C.F.R. § 416.927(f). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 416.927(a)(2) (same as 20 C.F.R. § 404.1527(a)(2)); 20 C.F.R. § 404.1527(c)(2) (explaining what is required for a source's opinion to be controlling); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. §404.1527(c)(2)).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c); 20 C.F.R. § 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. § 404.1527(c)(2)). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Dr. Moskel is Plaintiff's treating provider and provided one of two medical opinions that touched on Plaintiff's mental health limitations. (Admin. Tr. 24; Doc. 14-2, p. 25). Dr. Moskel opined in a check box opinion that Plaintiff had severe limitations. He thought Plaintiff would miss work more than three times a month, would have marked limitations in her ability to remember work-like procedures, maintain attention for two hour segments, maintain regular attendance, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of length of rest periods, get along with others, respond appropriately to changes in a routine work setting, understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of semiskilled and skilled work, interact appropriately with the general public, maintain socially appropriate behavior, travel to unfamiliar places, and use of public transportation. (Admin. Tr. 509- 15; Doc. 14-8, pp. 28-34). Dr. Moskel also found that Plaintiff had moderate limitations in sustaining an ordinary routine without special supervision, making simple work-related decisions, accepting instructions and respond appropriately to criticism from supervisors, and dealing with normal work stress. (*Id.*).

The ALJ decided to afford very limited weight to Dr. Moskel's opinion. (*Id.*). The ALJ reasoned that Dr. Moskel's opinion that Plaintiff suffers from extreme functional limitations does not comport with:

> normal psychiatric examination findings in the treatment records and need for only conservative mental health treatment without evidence of psychiatric hospitalization during the time that Dr. Moskel is suggesting the claimant would be unable to perform the bulk of unskilled work. For example, Dr. Moskel suggests that she would have marked limitation in the ability to remember work like procedures, maintain attention for two hours segments, and maintain regular attendance yet she consistently showed normal memory and attention/concentration in the clinical setting and only requires outpatient mental health treatment on an infrequent basis.

(*Id.*).

While Plaintiff argues otherwise, it was appropriate for the ALJ to find that Dr. Moskel's opinion was not supported or consistent with the record. Essentially, Plaintiff is claiming that the ALJ's summary is incorrect, and treatment notes show serious impairments. First, to any extent Plaintiff is asking the Court to reweigh the evidence de novo, it will not. A federal court is limited to deciding whether substantial evidence supports the ALJ's findings. *Torres v. Barnhart*, 139 F. App'x 411, 413 (3d Cir. 2005).

Keeping that standard in mind, substantial evidence supports the ALJ's decision to give "very limited weight" to Dr. Moskel's opinion. Dr. Moskel's own treatment notes do not align with his opinion. Examples include:

Page 18 of 26

- On a July 21, 2015 visit, Plaintiff's mental status was stable, but a mental status exam showed that she was anxious and chatty. Her mental status exam was otherwise normal. (Admin. Tr. 416-17; Doc. 14-7, pp. 52-53).

- On a November 24, 2015 visit, Plaintiff's mental status was stable, and presented with a depressed mood and anxiety. Her mood was anxious, but otherwise had a normal mental status exam. (Admin. Tr. 609-10; Doc. 14-9, pp. 33-34).

- On a January 28, 2016 visit, Dr. Moskel noted that Plaintiff was discouraged and anxious, and her speech was "chatty." However, Plaintiff herself noted that she was content, and she was satisfied with her treatment. (Admin. Tr. 607-08; Doc. 14-9, pp. 31-32).

- On Plaintiff's March 15, May 10, and June 7, 2016 visits, Dr. Moskel found no abnormalities in her mental status exams. On the March and May visits, Plaintiff subjectively reported that she was content, or content/improved. (Admin. Tr. 601-06; Doc. 14-9, pp. 25-30).

- On a July 5, 2016 visit, Dr. Moskel reported Plaintiff was stable but had an anxious mood. Her mental status exam was otherwise normal. (Admin. Tr. 599-600; Doc. 14-9, pp. 23-24).

- On a September 14, 2016 visit, Plaintiff presented with a discouraged, agitated, and anxious mood, and Dr. Moskel felt that Plaintiff was either stable or decompensating. Mental status exam was normal. (Admin. Tr. 597-98; Doc. 14-9, pp. 21-22).

- On September 28, 2016 visit, Plaintiff's mental status exam was normal. She subjectively reported that she was satisfied with treatment. Dr. Moskel assessed that her mental status was stable. (Admin. Tr. 595-96; Doc. 14-9, pp. 19-20).

- On visits on November 1, 2016, November 28, 2016, December 28, 2016 and February 28, 2017, Plaintiff presented with an anxious mood, but otherwise had a normal mental status exam. Her mental status was stable. (Admin. Tr. 587-94; Doc. 14-9, pp. 11-18).

Medical records from before the relevant period generally show the same findings. (*See* Admin. Tr. 420-51; Doc. 14-7, pp. 55-87). So, as Dr. Moskel's own treatment records show, Plaintiff had generally unremarkable mental status exams and her condition was stable. I acknowledge Plaintiff concern that on some occasions Plaintiff showed an abnormal mood or anxiety.[3] However, the ALJ considered the record as a whole (with extensive and specific citations), and even if there "is contrary evidence that would justify the opposition conclusion, as long as the substantial evidence standard is satisfied," this Court will uphold the Commissioner's decision. *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (internal citations omitted). As such, the ALJ's consideration of Dr. Moskel's opinion is supported by substantial evidence.

Plaintiff also argues that conservative treatment is an inappropriate reason to discount Dr. Moskel's opinion. I disagree. Conservative treatment is an appropriate factor for an ALJ to use when discounting a treating source's opinion. *Carolyn C. v. Kijakazi*, No. 20-cv-3544, 2021 WL 4932785, at * 26-27 (D.N.J. Oct. 22, 2021) (citing *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004); *Kiefer v. Saul*, No. 19-cv-547, 2020 WL 1905031, at *3 (W.D. Pa. Apr. 17, 2020)); *Viggiano v. Saul*,

---

[3] Plaintiff claims that Dr. Moskel occasionally found that Plaintiff had abnormal speech. (Doc. 17, p. 12). However, a review of the medical records show that Dr. Moskel would sometimes note that Plaintiff was "chatty." *See, e.g.*, (Admin Tr. 417; Doc. 14-7, p. 52; (Admin. Tr. 425; Doc. 14-7, p. 60).

18-cv-11685, 2019 U.S. Dist. LEXIS 224212, at * 59 (D.N.J. Dec. 30, 2019). And here, the ALJ relied on Plaintiff's conservative treatment, *in part*, in deciding whether Dr. Moskel's opinion should be given controlling weight. The ALJ also relied heavily on objective medical evidence, such as the many instances that Plaintiff presented to Dr. Moskel with normal mental status exams.

Plaintiff also appears to challenge the ALJ's description of Plaintiff's mental health treatment as "conservative." (Doc. 17, pp. 11-12). Plaintiff contends that she already attends therapy and takes psychotropic medications, so anything more invasive than that would include "electric shock therapy or a lobotomy." (*Id.*). However, I find that the ALJ appropriately characterized Plaintiff's treatment. Plaintiff seemed to respond well to Dr. Moskel's therapy and Dr. Moskel kept Plaintiff on the same three medications, with generally the same doses from November 24, 2015 to February 28, 2017. (Admin. Tr. 611-13; Doc. 14-9, pp. 35-37). *See e.g., Brown v. Comm'r of Soc. Sec.*, No. 19-cv-2110, 2020 U.S. Dist. LEXIS 44807, at * 18-19 (E.D. Pa. Mar. 16, 2020) (agreeing with the ALJ that therapy and medication effectively reduced claimant's symptoms, and as such, were appropriately characterized as conservative treatment). Further, during almost all of Plaintiff's visits with Dr. Moskel, he noted that Plaintiff's condition appeared stable. Therefore, I find that the ALJ correctly noted that Plaintiff received conservative treatment for her mental health disorders.

D.    WHETHER THE ALJ ERRED IN FAILING TO APPLY THE DIRECTIONS OF
      THE APPEALS COUNCIL

Plaintiff argues that the ALJ failed to follow the Appeals Council's order to obtain additional information concerning Plaintiff's impairments. (Doc. 17, pp. 15-17). Plaintiff asserts that this order required the ALJ to either recontact one of Plaintiff's treating providers to explain his treatment records, or to send Plaintiff for a consultative examination. (*Id.*). The Commissioner refutes this and argues that the Appeals Council did not order the ALJ to do these actions, rather, it specified that the ALJ *may* have to do them. (Doc. 20, pp. 21-22). I agree in whole with the Commissioner.

On November 23, 2018, the Appeals Council remanded Plaintiff's case back to the ALJ because he improperly excluded treatment notes from Dr. Ian Newbold. (Admin. Tr. 108-09; Doc. 14-3, pp. 36-37). These treatment notes "contains abnormal nerve conduction studies consistent with carpal tunnel syndrome," but because the ALJ did not consider these notes, he found that Plaintiff had "no significant manipulative limitations, because there is no evidence of radiculopathy via electromyography." (*Id.*) (cleaned up). Therefore, the Appeals Council ordered the ALJ to consider Dr. Newbold's records and decide whether Plaintiff's radiculopathy limits his ability to perform work. (*Id.*). The Appeals Council further noted that the ALJ might have to contact Dr. Newbold to clarify his medical records

because his records appeared identical, except the date of service changing from note to note. (*Id.*).

The Appeals Council then ordered the ALJ to: (1) "[o]btain additional evidence concerning the claimant's impairments in order to complete the administrative record," (2) "[f]urther evaluate the nature, severity, and limiting effects of claimant's medically-determinable impairments at the second and subsequent steps in the sequential evaluation process," (3) "[g]ive further consideration to the claimant's maximum [RFC]," and (4) consult an vocational expert to determine the effect of Plaintiff's limitations, if necessary. (*Id.*).

First, I'll address Plaintiff's contention that the ALJ should have ordered a consultative exam. The Appeals Council never directed the ALJ to order a consultative exam. Further, the ALJ is not required to order a consultative exam, rather, he *may* do so, if he feels it would "resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to . . . make a determination or decision" on a claim. 20 C.F.R. § 416.919a(b). "The decision to order a consultative examination is within the sound discretion of the ALJ." *Stroup v. Kijakazi*, No. 20-cv-1479, 2021 WL 5989138, at *5 (W.D. Pa. Dec. 17, 2021) (citing *Thompson v. Halter*, 45 F. App'x. 146, 149 (3d Cir. 2002)).

As applied here, the ALJ received and considered Dr. Newbold's medical records. And while some of his notes might appear be duplicative,[4] his notes are unique, legible, and probative of Plaintiff's radiculopathy. This allowed the ALJ to formulate an RFC that included a limitation based on Plaintiff's radiculopathy. Considering that Dr. Newbold's medical records were complete and sufficiently probative of Plaintiff's radiculopathy, it was reasonable for the ALJ not to request a consultative examiner to see Plaintiff.

Likewise, the ALJ did not have to contact Dr. Newbold because his longitudinal EMG reports were clear, understandable, and not duplicative. Further, the Appeals Council did not require the ALJ to contact Dr. Newbold, rather it only required it if the ALJ needed clarification. So, in sum, the ALJ carefully considered the Appeals Council order and complied with their order. There is no reversible error on this issue.

E.    WHETHER ALJ ERRED IN GIVING GREAT WEIGHT TO MICHAEL MESAROS' MEDICAL OPINION

Finally, Plaintiff argues that the ALJ erred in giving the opinion of Dr. Michael Mesaros, a state medical consultant, great weight when he did not consider Dr. Newbold's medical records, and thus, Plaintiff's carpel tunnel syndrome. (Doc.

---

[4] As the Commissioner notes, it appears that Dr. Newbold would copy his last treatment note and add new updates to the copy. This gives the appearance that his treatment notes look the same, except for an updated treatment date.

17, pp. 17-18). The Commissioner argues that despite this, the ALJ accounted for Plaintiff's carpel tunnel syndrome by including an RFC limitation of only "frequent right fine manipulation." (Doc. 20, pp. 20-21). I find Plaintiff's argument unconvincing.

It is well established that an ALJ can rely on a state agency consultant's medical opinion, even if additional medical evidence is submitted between the time the opinion was rendered and the ALJ's decision. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009). "The fact that the state agency physician did not have access to the entire evidentiary record - because the record was incomplete at the time of the assessment - is inconsequential [if] the ALJ considered the entire evidentiary record and substantial evidence supports his determination." *Hopkins v. Colvin*, No. 15-440, 2015 U.S. Dist. LEXIS 153092, at *4 (W.D. Pa. Nov. 12, 2015) (quoting *Thacker v. Astrue*, No. 11-cv-246, 2011 WL 7154218, at *19 (W.D.N.C. Nov. 28, 2011)).

As applied here, even if the state agency consultant did not have the entire medical record, the ALJ had access to the entire record. The record included Plaintiff's testimony, a third-party function report, Dr. Newbold's treatment notes, and Dr. Newbold's accompanying opinion. The ALJ is responsible for determining a Plaintiff's RFC, not a physician, and in this case, the ALJ considered Dr. Newbold's medical records in detail and added an RFC limitation that limited her

right-hand fingering to less than full capacity. Therefore, Plaintiff's argument on this point is unconvincing.

V.     CONCLUSION

For the aforementioned reasons, Plaintiff's request for a new hearing or for a benefits award be denied as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment will be issued in favor of Kilolo Kijakazi.

(3) The Clerk of Court will close this case.

Date: March 22, 2022                              BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge